## Louisville & Nashville R. R. Co. v. Sewell.

(Decided February 8, 1911.)

### Appeal from Boyle Circuit Court.

1. Written Rules—Construction for the Court—Caution—Significance of 'Green' Flag.—The construction of written rules is generally for the court; so in construing rule 226 it was for the court to say whether the conditions shown, justified its application, as well as to define rule 26 which signifies that a green flag on the side of a track means caution. The court should so have instructed the jury.

2. Negligence—Reckless Disregard of Life.—It was gross negligence, evidencing a reckless disregard of the lives of those ahead on the track, for the engineer of the train to dash at such high speed around a curve and through cuts onto a track, disregarding the caution signal placed for his guidance and which he admits he saw. Therefore an instruction allowing punitive damages was proper.

3. Verdict—Bill of Exceptions—Agreement of Attorneys.—Where the bill of exceptions shows that the amount of the verdict rendered was agreed to by the attorneys representing both parties, who asked the court to allow the jury to sign it as their verdict, one of the parties will not be heard to say that the nominal verdict, in fact its own agreement, was the result of passion or prejudice on the part of the jury. The verdict, so made, is as binding as would be a consent judgment.

B. D. WARFIELD, CHAS. R. McDOWELL and CHAS. RODES for appellant.

ROBT. HARDING, JOHN W. RAWLINGS, EMMETT PURYEAR, and GREEN, VAN WINKLE & SCHOOLFIELD for appellee.

OPINION OF THE COURT BY JUDGE O'REAR—Affirming.

Appellee was section foreman, working on appellant's road in Boyle county. The boarding car was stationed at Mechanicsburg, where there was a station and siding, but not a telegraph office. He was required to begin work at six o'clock in the morning, with his crew of men, who went from the boarding car to the point at which they were at work, some two miles distant, on a hand car. There was a fast through passenger train to pass Mechanicsburg at 5:09 a. m. On August 23, 1907, appellant was awakened by the cook at five thirty, and breakfasted and started out with his men about six a. m. He knew, or could have known, that the passenger train had not passed, but there was no way to learn how late it was. So he started on his way, going in the same direction the passenger train was to go. The track was straight for a quarter of a mile west of Mechanicsburg, when it made a curve through a cut, then curved again in the other direction through another cut. Appellee caused a green flag to be stuck up on the side of the track near Mechanicsburg on the engineer's side, sent a man ahead to flag any train that might be coming from the opposite direction, then preceeded on the way with his car and crew. After they had gone about seventeen hundred feet through the first cut and around the curve the passenger train came up rapidly behind them, without warning, it is claimed, running at a speed of about forty miles an hour. When discovered it was about one-hundred and seventy-five feet from the hand car. The men jumped from the car, but were unable to remove it from the track owing to the proximity and speed of the approaching train. The locomotive struck the car, throwing it to one side and demolishing it. Splinters, gravel, and cinders were thrown from the wreckage, and appellant contends and offered evidence to show that some of the debris struck him in the eye. A splinter and cinders and other foreign substance were subsequently removed from his eye, but he claims that it was left impaired as to its vision, while the eye-ball and the lower lid by the healing of the wound caused by the splinter adhered permanently. He was awarded damages in the sum of $2,000.00 by the verdict of the jury and judgment of the court in this trial of the action brought by him for the negligent running of the passenger train without observing and obeying his signal. A rule of the company was put in evidence stat-

ing that "green signifies caution, and is a signal to go slow." (Rule 26).

A witness for appellant, the engineer in charge of the locomotive, testified that a green flag on the side of the track indicated that trackmen were at work twenty-seven hundred feet away, and that if the speed was reduced so as to have the train under control at 2700 feet distance that is all that was required. This evidence was based, doubtless, on rule 226, which rule, however, the court refused to admit. That rule is:

"When making repairs which are in the nature of obstructions, and requiring a considerable length of time, such as laying new steel, making a heavy raise in the track, etc., a flagman must be sent in each direction a distance of 90 rails, or 2700 feet, where a red flag on a standard staff will be put up, and a torpedo placed on the rail, or 3,600 feet from the obstruction, where a green flag on a standard staff will be placed; he will then return to the red flag and work near it until the approach of the train. When the engineer has acknowledged the red flag, as per rule 201, the torpedo can be removed until the train has passed, but must be replaced immediately. If the view is obstructed, or if on descending grade, the flagman must go as much further as may be necessary to reach a point where he is absolutely sure he can be seen by the engineer at a sufficient distance in which to make a safe stop. When the obstructions are of a very temporary nature, the green flags may be omitted, but the red flags and torpedo must be used as directed above. In all cases, the standard staff with horizontal arm must be used. It must be firmly and conspicuously placed in the ground on the engineer's side of the track for approaching trains. Double track: As trains may, at any time, be detoured from the usual track, the full measure of protection must be observed, in each direction, before obstructing track that is ordinarily used for traffic in one direction only."

The action of the court in rejecting this rule, and the refusal of the court, to instruct the jury relative to the absence of a red flag, and to appellee's duty regarding the placing of same, are relied on as error and ground for reversal.

Rule 226 was properly rejected. Appellee was not then at work on repairs which were "in the nature of obstructions, and requiring a considerable length of time, such as laying new steel, making a heavy raise in the

track, etc.," which necessitated the observance of that rule by him. He had not reached the place of work, nor was the track obstructed in any of the ways indicated. But it is insisted that the presence of the hand car on the train track was itself such an obstruction. The rule specifies the character of the obstructions which would necessitate the observance of that rule. The words "et cetera" mean other obstructions similar to and of this character of those specified. The construction of written rules is generally for the court. (C. N. O. & T. P. Ry. Co. vs. Lovell, 141 Ky. 260.) So, in construing rule 226 it was for the court to say whether the conditions shown justified its application, as well as to define rule 26. The latter did not admit of the interpretation put on it by appellant's engineer. It is imperative, and admits of no qualification. It commands caution from the moment it is reached, as well as required the train from that point to go slow until the cause is ascertained and passed in safety. The court should have so instructed the jury. Instead, the instructions left it to the jury to say whether this green signal was to notify the engineer that he was not to expect any obstruction closer than 2700 feet from the flag. But the error was committed in appellant's favor, and of course it will not be heard to complain of that fact.

Appellee was compelled to go to his work on the hand car, taking his men and their tools, etc., they had to pass over the main track; they had to begin work at 6 o'clock, A. M.; they did not know and could not learn when the train would pass, as it was then an hour late; they were required to protect themselves, as well as the oncoming train from danger by avoiding a collision; they ought not, reasonably, to have stopped the train, as by signalling it by a red flag, or by a flagman, to a stand-still until the hand-car proceeded to its journey's end; it was required instead that such caution signal would be given the engineer of the train as would enable him to get his train under control, and by whistle or bell warn the car out of his way. The course suggested, if the rule had been observed, was well calculated to prevent an accident of this character. Appellees evidence is that the engineer did not "acknowledge" the green signal by whistling, as he should; that he did not proceed with caution, nor slacken the speed of the train until too late and until appellee and his fellow workmen were placed in imminent peril. The case must

be tested on appeal as to the correctness of the instructions on the plaintiff's behalf, as well as on the ruling of the court in overruling defendant's motion for a peremptory instruction, on the plaintiff's evidence, as the verdict for him found the facts to be as outlined in his evidence. We conclude that the peremptory instruction was properly overruled, and that the case was submitted under unobjectionable instructions so far as defendant is concerned.

It was gross negligence, evidencing a reckless disregard of the lives of those ahead on the track, for the engineer to dash at such high speed around the curve and through the cuts onto a track which he could not see but a few yards ahead, disregarding the caution signal placed for his guidance, and which he admits that he saw. Therefore the instruction allowing punitive damages was proper.

Appellant contends, in addition, that the verdict is excessive, and flagrantly against the evidence. The bill of exceptions shows that the amount of the verdict was agreed to by the attorneys representing the plaintiff and the defendant, and the court asked to allow the jury to sign it as their verdict, the defendant saving exceptions to all instructions given. The court indicated that he regarded the amount agreed on as excessive, but said he would allow it if agreed to by the parties, but that such excessiveness should not constitute a ground for new trial. Thereupon the verdict was signed by the jury as though it was their finding. Notwithstanding, the motion for new trial did rely on the fact that the verdict was excessive.

It is insisted by appellant that the interpellation of the alleged agreement into the bill of exceptions by the court was irregular, because the bill was not made up (on an order extending the time) until the succeeding term. It was competent and proper for the trial judge to incorporate into the bill any fact occurring on the trial affecting its regularity and conduct, whenever the bill was presented to him for signature, if it did not already contain the statement. The stipulation is a waiver of the error in the amount of the verdict, if it was an error. Appellant closed that question when it substituted its own consent for the jury's judgment. It will not now be heard to say that the nominal verdict, in fact its own agreement, was the result of passion or prejudice on the part of the jury. The verdict so made is as

binding, subject to the exceptions reserved in the stipulation, as would be a consent judgment.

Perceiving no error prejudicial to any substantial legal right of appellant, the judgment is affirmed.