COMMONWEALTH of Kentucky, Appellant

v.

Joshua S. GOFF, Appellee

NO. 2013-CA-000345-MR

Court of Appeals of Kentucky.

RENDERED: SEPTEMBER 25, 2015; 10:00 A.M.

Briefs for Appellant: Jack Conway, Attorney General, Special Assistant Attorney General, Dorislee Gilbert, Louisville, Kentucky.

Brief for Appellee: Bruce P. Hackett, Louisville Metro Public Defender, Louisville, Kentucky.

BEFORE: ACREE, CHIEF JUDGE; NICKELL AND TAYLOR, JUDGES.

*OPINION AND ORDER*

NICKELL, JUDGE:

Consequences attach when a probationer violates conditions of release. This Opinion confirms the role of the Commonwealth's Attorney in a court-initiated hearing when a probated defendant fails to comply with the terms of release.

As the appellant, the Commonwealth argues it is a critical player in the probation modification[1] process—to protect the rights of victims, to champion the interests of all Kentuckians, and to ensure probation violators receive due process. While acknowledging KRS[2] 533.050,[3] the statute

---

1. In this Opinion we do not distinguish between probation *modification* and *revocation*.

2. Kentucky Revised Statutes.

3. The statute reads in its entirety:
   (1) At any time before the discharge of the defendant or the termination of the sentence of probation or conditional discharge:
   (a) The court may summon the defendant to appear before it or may issue a warrant for his arrest upon a finding of probable cause to believe that he has failed to comply with a condition of the sentence; or
   (b) A probation officer, or peace officer acting at the direction of a probation officer, who sees the defendant violate the terms of his probation or conditional discharge may arrest the defendant without a warrant.
   (2) Except as provided in KRS 439.3108, the court may not revoke or modify the conditions of a sentence of probation or conditional discharge except after a hearing with defendant represented by coun-

governing probation violations, does not mention the Commonwealth, the Commonwealth's Attorney forges a role for itself because it initiated the prosecution that ultimately resulted in the punishment that triggered the probation. The Commonwealth further argues Kentucky courts have traditionally placed the burden on the Commonwealth's Attorney to prove an alleged probation violation by a preponderance of the evidence. *Murphy v. Commonwealth*, 551 S.W.2d 838, 841 (Ky. 1977).

In contrast, the appellee, Joshua S. Goff,[4] argues the Commonwealth's Attorney can play no role in probation modification whatsoever because the General Assembly did not explicitly assign such a role in enacting KRS 533.050. The specific question posed by the Commonwealth's Attorney is whether it may participate in a court-initiated probation hearing *only if invited* to do so by the trial court. Between these two diametrically opposed positions we seek a resolution that is both constitutionally and statutorily sound.

## PROCEDURAL BACKGROUND

The question of how to accomplish probation modification[5] arose in this case when the Jefferson Circuit Court received a written supervision report dated January 15, 2013—a Tuesday—reciting three violations[6] and stating Goff was "currently awaiting arraignment at Louisville Metro Corrections." Goff had been arrested that day on a probation violation detainer as he arrived at the office of the Division of Probation and Parole. Conspicuously absent from the supervision report was any indication of who received a copy of the

---

sel and following a written notice of the grounds for revocation or modification.

4. Facts of the underlying crime are irrelevant to the issue we address, but are provided to give a complete statement of the case. Following his grandfather's death, Goff moved in with his seventy-nine-year-old grandmother who suffers from dementia; he began using her debit card and writing checks on her bank account without her knowledge or permission. In March 2012 he was indicted for knowing exploitation of an adult over $300.00; theft by unlawful taking over $10,000.00; and, fraudulent use of a credit card over $10,000.00—three Class C felonies each with a penalty range of five to ten years.

The Commonwealth offered a plea agreement in which it opposed probation and recommended Goff be sentenced to serve three concurrent five-year terms; however, if the court granted probation, the Commonwealth asked that Goff receive seven years on each charge. Goff pled guilty to all three charges in July 2012. Over the Commonwealth's objection, he received three concurrent sentences for a total of seven years, probated for five years. As part of the agreement, Goff was to pay restitution of $42,137.00 at seven percent interest (a total of $45,086.59) in monthly installments; submit to random drug urinalysis; and comply with all directives from the Division of Probation and Parole.

Goff became a participant in the SMART Probation pilot project operating in Jefferson and four other Kentucky circuit court jurisdictions. SMART is an acronym for Supervision, Monitoring, Accountability, Responsibility and Treatment. Hallmarks of the program launched in 2011 as a result of House Bill 463, are swift recognition and punishment of probation violations with expedited hearings. Unbeknownst to the Commonwealth or defense counsel, the trial court sent a letter to Goff encouraging him to succeed on SMART probation and reminding him of the items he and Goff had discussed.

5. While probation *modification* and *revocation* are two distinct outcomes, the process for reaching that outcome—whatever it is— must be the same. Were we to recognize a different procedure for modification, the trial court would have to prejudge the case to determine which avenue to follow and that would be an unworkable result.

6. Failure to report to probation officer; failure to submit to drug testing as directed; and failure to make restitution as directed. No sanction was recommended, leaving the decision to the trial court's discretion.

report. In pleadings, the Commonwealth indicates it did not receive a copy, but apparently the trial court did because it ordered the Jefferson County Department of Corrections to deliver Goff to the court on January 17, 2013. Goff appeared in court—alone—for an arraignment at which the court told him to say nothing and then read to him the alleged violations from the supervision report. Immediately thereafter, without warning Goff of any of his constitutional rights or the consequences of speaking to the court—and with no defense attorney at Goff's side—the court engaged Goff in a candid exchange in which Goff essentially admitted violating the terms of probation. Absent from the courtroom during the arraignment was a representative of the Commonwealth's Attorney and the probation and parole officer who generated the supervision report. The court gave Goff "the benefit of the doubt," released him from jail, and credited him with the three days he had served. Out of the blue, the prosecutor received an electronic copy of the following order entered on January 18, 2013:

This matter came before the Court on January 17, 2013 for arraignment following his arrest (sic) a result of the circumstances set out in on (sic) a Special Supervision Report dated January 15, 2013.

Following discussion of record and the Court being otherwise sufficiently advised;

IT IS HEREBY ORDERED that, for the reasons stated on the record and incorporated herein by reference, the conditions of the Defendant's probation are MODIFIED so as to require that he serve three (3) days (credit time served) in the Jefferson County Jail.

SO ORDERED this 17th day of January, 2013.

/s/ A.C. MCKAY CHAUVIN, JUDGE

ec: Hon. Stacy Greive (sic)

Officer Laura Wesley; Probation and Parole

Goff never complained about the modification or the manner in which it occurred. Goff's counsel argues any complaint about the trial court's procedure was personal to Goff and he waived any error by not seeking reconsideration of the order or filing an appeal.

With the above-quoted order in hand, on February 4, 2013, the Commonwealth moved the trial court to revoke Goff's probation. When the motion was called by the court a week later, with Goff and his attorney present, the Commonwealth requested a hearing because it had not been present on January 17, 2013, and had not had an opportunity to address the violations—especially the lack of payment toward the extreme amount of restitution[7] owed to the elderly victim. The trial court denied the motion, stating the violations had been adequately resolved in January and the three-day jail stay "got Mr. Goff's attention." An order denying the motion to revoke was entered on February 12, 2013, one day after the motion had been heard.

On February 18, 2013, the Commonwealth filed a notice of appeal in this Court, challenging the order entered on January 18, 2013, that modified Goff's probation without the Commonwealth's knowledge, input or participation. That same day, the Commonwealth moved the trial court to reconsider its denial of the motion to revoke without convening a hearing. When that motion was heard on February

---

7. Monthly restitution payments amounting to $45,086.59 were to begin November 1, 2012, but no payment occurred until January 15, 2013, the day Goff was arrested on three probation violations.

25, 2013, the court granted the desired hearing, but characterized the motion as "disingenuous" as set out in the following exchange:

Court: *Commonwealth v. Joshua Shane Goff.*

Commonwealth: The Commonwealth's motion to reconsider the Court's . . . .

Court: Give you a hearing?

Commonwealth: Yes.

Court: I—I'm really—um—torqued about it frankly, but I will give you the hearing. I don't think you have . . . it gets . . . I think it's a "be careful what you ask for situation" because I do this probably a thousand times and you all have never objected—EVER—so you shouldn't object just because you don't like the decision I made this time. It's . . . it's troublesome.

Commonwealth: The Commonwealth is objecting because we did not (get the information about the violation). [Comment difficult to decipher because both prosecutor and court speak at once.]

Court: I understand, but what I'm saying is that you all are here hundreds— literally hundreds of times—when that takes place. I send out hundreds of orders to that effect and you all have never objected—I'm guessing because you agreed with what I decided. It's really disingenuous to object only when you don't agree with what I decided. So that's why I'm torqued about it. So, I'll give you the hearing date.

A hearing on the motion to reconsider denial of the revocation without a hearing was set for April 9, 2013. Before that hearing occurred however, two more supervision reports were filed detailing even more violations.

As of March 11, 2013, Goff had again failed to submit to random drug tests and report to his probation officer. He had also absconded from supervision, prompting the probation officer to request a probation violation warrant. Then, on March 18, 2013, a special supervision report was filed stating Goff had turned himself in three days earlier, he had been arrested on the probation violation detainer without incident, and he was currently awaiting arraignment in jail. In this instance, the prosecutor who had handled Goff's original charges received copies of both reports. On March 20, 2013, Goff, with counsel at his side, was arraigned on the violations recited in the two March supervision reports and the matter was continued until April 9, 2013. It appears no prosecutor attended the arraignment.

Goff, his attorney and two prosecutors attended the hearing on April 9, 2013, at which the trial court reconsidered the Commonwealth's motion to revoke without a hearing. At the outset, defense counsel asked for clarification of the precise claim the court was hearing that day. The trial court stated its position—since the court had scheduled the January 17, 2013, arraignment on its own initiative, the Commonwealth had *no right* to attend the session because only a defendant has due process rights; furthermore, the Commonwealth cannot be revoked, only a defendant can be revoked. Citing KRS 533.050(2), the Commonwealth argued a proper hearing had not occurred on January 17, 2013, to which the trial court stated it would hear evidence concerning only the newest violations and would *not rehash* the previously resolved violations. Thus, the trial court granted the Commonwealth's request for a hearing, but would not allow it to prove the January violations that resulted in Goff serving three days in jail. Thereafter, the Commonwealth called Goff's probation officer to the stand and questioned her about the two March 2013

supervision reports.[8] At the close of the hearing, Goff's probation was revoked and he was ordered to begin serving the previously imposed seven-year sentence.

On April 22, 2013, citing CR[9] 59.05, Goff moved to vacate the revocation, claiming there was no statutory basis in KRS Chapters 439 or 533 for the Commonwealth to actively participate in a probation revocation hearing, and the Commonwealth had filed an unauthorized pleading by moving for revocation. The Commonwealth disagreed, arguing KRS 15.725 makes the Commonwealth's Attorney responsible for prosecuting violations of criminal and penal laws in circuit court—including probation violations. Moreover, the Commonwealth argued a probation violation must be proved by a preponderance of the evidence, *Murphy*, 551 S.W.2d at 841, and the prosecutor is the logical entity to develop such proof. Further, the Commonwealth asserted if the trial court attempts to develop the proof itself, it is no longer the "neutral and detached" magistrate necessary to satisfy due process. *Gagnon v. Scarpelli*, 411 U.S. 778, 786, 93 S.Ct. 1756, 1762, 36 L.Ed.2d 656 (1973); *Marshall v. Commonwealth*, 638 S.W.2d 288, 289 (Ky. App. 1982). The Commonwealth also argued excluding it from participating in a court-initiated revocation hearing places the trial court in the position of engaging in *ex parte* communications when a judge is ethically prohibited from personally investigating a case "and must consider only the evidence presented." SCR[10] 4.300, Canon 3B(6)-(7).

After hearing Goff's motion to vacate and the Commonwealth's opposition on June 5, 2013, the trial court allowed the revocation to stand in an order entered August 21, 2013. In its attempt to frame the issues for this appeal, the trial court concluded in that order:

The Court recognizes and appreciates that KRS 533.050 makes no reference, either explicitly or implicitly, to the Office of the Commonwealth's Attorney ("the Commonwealth"). KRS 533.050 codifies the due process rights due a defendant facing the possibility of revocation. Defendants have due process rights. Governments and governmental agencies do not. This is so because the purpose underlying due process rights is to protect defendants from governments and governmental agencies. The Commonwealth has no *right* to be present or to participate in a hearing initiated by the Court pursuant to KRS 533.050. The Commonwealth has no *right* to a hearing on a motion asking the Court to exercise its authority under KRS 533.050. To the extent the Commonwealth has argued otherwise, that argument is specifically and categorically rejected. Be that as it may, it does not follow that allowing the Commonwealth to participate in a KRS 533.050 hearing is a violation of that statute or a defendant's due process rights. This is so regardless of whether the hearing was initiated by the Court or in response to a motion by the Commonwealth asking the Court to revoke a defendant's probation.

The statutory authority for the conduct of probation revocation hearings is set out in KRS 533.050. In keeping with same, the Court is authorized to "summon the defendant to appear" or "issue a warrant for his arrest" upon a finding of probable cause to believe that the defendant has failed to comply with a

---

8. This hearing occurred in two parts. The second part has no audio.

9. Kentucky Rules of Civil Procedure.

10. Rules of the Kentucky Supreme Court.

condition of his sentence. KRS 533.050(1). However, the Court may not revoke or modify the conditions of a defendant's probation in the absence of: (1) written notice to the defendant of the grounds for revocation or modification; and (2) a hearing at which the defendant is represented by counsel. KRS 533.050(2). KRS 533.050 does not specify the manner in which the written notice is to be provided or the hearing is to be conducted. It is nevertheless incumbent upon the Court to insure that the notice and the hearing are provided/conducted in a manner that provides the Defendant with due process of law. Such was the case in the instant case. The Defendant was provided with written notice of the alleged violations. The March 11, 2013 Special Supervision Report was made a part of the court file and was appended to the Commonwealth's Supplement to Motion to Revoke filed on March 13, 2013. As such, and because the Defendant was on notice of the alleged violations approximately thirty-eight (38) days in advance of the hearing, he was given a full and fair opportunity to prepare to address those allegations. The Defendant, who was present at the hearing with appointed counsel, was provided with a full and fair opportunity to confront and cross-examine any witnesses called against him, and to present his own witnesses and/or documentary evidence. It has not been suggested, and there is nothing in the record to suggest, that the Court failed to preside over the hearing in an appropriately neutral and detached manner. At the conclusion of the hearing the Court issued a written Order setting out the basis for ruling. As such, the

Defendant was afforded due process of law. *See Gagnon v. Scarpelli,* 411 U.S. 778, 786, 93 S.Ct. 1756, 1761–[17]62 [36 L.Ed.2d 656] (1973); *Morrissey v. Brewer,* 408 U.S. 471, 489, 92 S.Ct. 2593, 6604 [2604, 33 L.Ed.2d 484] (1972); *Commonwealth v. Alleman,* 306 S.W.3d 484, 486 (Ky. 2010). That due process was in no way impeded or precluded by the presence and participation of the Commonwealth at the hearing.

Wherefore, IT IS HEREBY ORDERED that the Defendant's motion to vacate the Court's Order of April 9, 2013 revoking his probation is respectfully DENIED.

SO ORDERED this 20th day of August, 2013.

/s/ A.C. MCKAY CHAUVIN, JUDGE
www.mckaycauvin.com

ec: Hon. Stacy Grieve

Hon. Aaron Dyke / Hon. J. David Niehaus

Goff filed notice of his intention to appeal the order denying his motion to vacate, but then filed a suggestion of mootness which a motion panel of this Court treated as a motion to dismiss and granted as of September 17, 2004.[11] Once Goff's cross-appeal was dismissed, the only issue before this Court was the Commonwealth's appeal on the limited issue of whether a trial court may modify probation on its own initiative without a hearing in which the Commonwealth is allowed to participate.

As he had done with his own cross-appeal, Goff moved to dismiss the Commonwealth's appeal, suggesting it, too, was moot. He claimed the ultimate revocation of his probation divested this Court of subject matter jurisdiction under *Kentucky Board of Nursing v. Sullivan Uni-*

---

11. *Goff v. Commonwealth,* 2013–CA–001471–MR, was consolidated with this appeal on

October 23, 2013, but subsequently dismissed.

*versity System, Inc.*, 433 S.W.3d 341 (Ky. 2014), rendering the appeal moot because any appellate opinion would be advisory only and, therefore, prohibited. Acknowledging the question framed for appeal is "technically moot," the Commonwealth opposed the motion to dismiss arguing the issue—which so far has evaded review—is likely to be repeated, and, furthermore, the window in which Goff could request shock probation[12] was still open. A motion panel of this Court passed the motion and the suggestion of mootness to this merits panel for resolution.

During the hearing on April 9, 2013, the trial court confirmed it commonly modifies probation without input from the Commonwealth; perhaps as often as "a thousand times." According to the Commonwealth's brief, the practice continues in that court today. While a ruling in this case will have no "practical legal effect" on Goff, the question presented is an important one in need of resolution. *Morgan v. Getter*, 441 S.W.3d 94, 100–03 (Ky. 2014). Thus, we deny the motion to dismiss the Commonwealth's appeal as moot.

## ANALYSIS

In this Opinion we address the limited question of whether a trial court may call a probationer before it to answer alleged probation violations, and modify his sentence, all without notice to and participation by the Commonwealth's Attorney and defense counsel. This is not a typical case in which we are asked to determine whether the record supports a conclusion that probation was properly modified. Rather, we are asked to determine whether the modification procedure used by the trial court was legally sufficient. Our review of this purely legal question is *de novo*. *Hamilton–Smith v. Commonwealth*, 285 S.W.3d 307, 308 (Ky. App. 2009).

The Commonwealth has acknowledged the issue raised in this appeal was not preserved for our review—but the way it arose did not afford an opportunity to raise the issue *before* the modification occurred. Per RCr[13] 10.26, we grant palpable error review.

Our starting point is KRS 533.050(2) which dictates *two events must occur before* a probated sentence is modified or revoked: a *hearing* must be held during which the defendant is represented by counsel; and, the defendant must receive—in writing—the grounds alleged in support of modification. In reviewing the events of January 17, 2013, we conclude neither statutorily mandated event occurred; thus, the procedure used by the trial court is suspect.

First, Goff appeared for arraignment before the trial court alone—he was *not* represented by counsel as required by KRS 533.050(2)—a flaw we cannot overlook. Second, the trial court *read* the alleged violations to Goff; there is no indication in the record written notice,[14] as required by statute, was provided to Goff *prior* to modification being ordered at arraignment—a second flaw we cannot excuse. The expedited procedure used by

---

**12.** An order was entered on November 1, 2013, granting Goff's motion for shock probation as of January 9, 2014.

**13.** Kentucky Rules of Criminal Procedure.

**14.** Often a probation violator receives written notice of the alleged violations when the Commonwealth attaches the supervision report to its motion to revoke. *Burke v. Commonwealth*, 342 S.W.3d 296, 298 (Ky. App. 2011). However, no motion to revoke was filed in this case prior to arraignment. The Commonwealth did not move to revoke Goff's probation until *after* modification had already occurred.

the trial court did not even partially comply with KRS 533.050(2), although the trial court appears confident it did.

Furthermore, we are not convinced the arraignment—as conducted by the trial court—constituted the *hearing* envisioned by KRS 533.050(2). The trial court correctly notes the legislature has not specified how notice of the alleged violations must be delivered to the probationer, nor how the mandatory "hearing" must be conducted, and has not assigned a role to the Commonwealth's Attorney at that hearing. However, to pass constitutional muster, the hearing must comport with minimum due process requirements which have long been identified as:

(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Morrissey*, 408 U.S. at 488–89, 92 S.Ct. at 2604. A decade later, Kentucky courts applied the same minimum due process rights in the context of a probation revocation hearing. *Marshall*, 638 S.W.2d at 289.

Comparing Goff's arraignment to the basic rights listed in *Morrissey* and echoed in *Marshall*, we have already mentioned the failure to give written notice of the alleged violations. Next, the trial court heard no witnesses, no evidence and no argument—three events presupposing participation by counsel for both the probationer and the Commonwealth. Goff, without the benefit of counsel, was never told the evidence against him, nor that he could cross-examine adverse witnesses or present his own witnesses and proof. Since there were no witnesses, an opportunity to question them never materialized. This turn of events is particularly troubling because our Supreme Court has stated "[d]ue process requires that alleged violations be established through sworn testimony, with the opportunity for cross-examination by the probationer." *Hunt v. Commonwealth*, 326 S.W.3d 437, 439–40 (Ky. 2010) (improper for unsworn probation officer to simply apprise court of violations). Based on *Hunt*, we conclude the trial court's acceptance of the probation officer's signed supervision report—without more—was insufficient proof upon which to find a violation and enter a modification.

Whether the trial court was "neutral and detached" is also questionable. Because arraignment involved only the judge and Goff—a bailiff was in the courtroom but said nothing—the judge played multiple roles—social worker, defense attorney, prosecutor and judge—to name a few. Finally, the order modifying probation stated no facts or reasons upon which the modification was based. In the sheer interest of speed, it appears the trial court excluded the Commonwealth from participating and overlooked all six of Goff's minimal due process rights. We understand the desire to shorten the time between a probation violation and punishment, but not at the expense of the probationer's constitutional rights. As conducted, Goff's arraignment was an inadequate precursor to probation modification. Thus, we must vacate the order of modification and remand the matter to the trial court for further proceedings consistent with this Opinion.

■ However, our review is not complete, because the revocation hearing that occurred two months later—a hearing begrudgingly granted to the Commonwealth and then limited in scope—was also flawed. Announcing it had read KRS 533.050—an exercise he suggested others may have failed to do—the trial court concluded the Commonwealth *had no right* to participate in any court-initiated modification hearing because the word "Commonwealth" does not appear within the statute. From the absence of that single word, the trial court concluded it could exercise its discretion in conducting the hearing as it saw fit and *invite* the Commonwealth's Attorney to participate if and when it so chose. We disagree. KRS 533.050 does not mention the word "Commonwealth," but we do not read the statute as reducing the Commonwealth's Attorney to a spectator at every court-initiated probation hearing.

First, a strict reading of KRS 533.050 mandates participation of both the defendant and defense counsel at the hearing. Allowing Goff's arraignment to morph into a modification hearing without the presence of defense counsel violated the trial court's own insistence on strict application of the statute's language.

■ Second, KRS 533.050—first enacted in 1975 and amended as recently as 2011—cannot be read in isolation; it must be applied in the context of the entire penal code. *Pearce v. University of Louisville, by and through its Board of Trustees*, 448 S.W.3d 746, 749 (Ky. 2014) (read particular statute and entire body of law to ensure logical interpretation). For example, it must be read in tandem with KRS 15.725, enacted in 1976, which gives each Commonwealth's Attorney:

the duty to prosecute all violations whether by adults or by juveniles subject to the jurisdiction of the Circuit Court of the criminal and penal laws which are to be tried in the Circuit Court in his judicial circuit.

By treating the prosecutor as a "by invitation only" guest at a court-initiated probation hearing, the court prevented the Commonwealth's Attorney from doing the job the legislature specifically assigned to it.

Third, even without KRS 15.725, absence of the word "Commonwealth" from KRS 533.050 would be insufficient reason to eliminate the prosecutor from a probation modification hearing. RCr 9.78 does not mention the Commonwealth's Attorney, but no one is suggesting the prosecutor is an unnecessary component in a suppression hearing. Similarly, KRS 504.100 does not contain the phrase "Commonwealth's Attorney," but the prosecutor is involved in a criminal defendant's competency hearing. Finally, RCr 8.08, 8.09 and 8.10 do not mention the Commonwealth's Attorney either, but one would be hardpressed to eliminate the prosecutor from the taking of a guilty plea or conditional plea, or withdrawal thereof.

■ Fourth, the legislature's decision not to specify a role for the prosecutor in KRS 533.050 is not the equivalent of excluding him from the probation modification process—to require every statute to include every applicable thought would create unnecessary redundancy. Kentucky courts have long placed the burden on the Commonwealth "to show by a preponderance of the evidence that the [probationer] has violated the terms of his probation[,]" *Murphy*, 551 S.W.2d at 841, and in rendering *Hunt*, 326 S.W.3d at 439–40, confirmed sworn testimony is required. Thus, Kentucky courts recognize the value of a prosecutor's participation in a probation modification hearing, and

failure of the legislature to change a known judicial interpretation of a statute

[is] extremely persuasive evidence of the true legislative intent. There is a strong implication that the legislature agrees with a prior court interpretation when it does not amend the statute interpreted. *Hughes v. Commonwealth,* 87 S.W.3d 850, 856 (Ky. 2002) (*quoting Rye v. Weasel,* 934 S.W.2d 257, 262 (Ky. 1996)). The 2011 legislative session would have been a perfect opportunity to correct any flaw in KRS 533.050—if any flaw there was—since the General Assembly was making sweeping changes to the criminal code in an effort to reduce Kentucky's prison population and incarceration costs, reduce crime and increase public safety. Revising KRS 533.050(2) was certainly on the General Assembly's radar during the 2011 session because the statute was amended to reference the adoption of KRS 439.3108, which created a system of graduated sanctions a probation officer may impose for probation violations [15] without court involvement. Since the legislature could have, but did not, amend the statute to muzzle the Commonwealth during court-initiated probation hearings, we must conclude it agrees with the court's long-standing interpretation that a prosecutor plays a vital role in a probation hearing and does not attend by invitation only.

Fifth, we fully recognize KRS 533.050 does not specify a role for the Commonwealth, but the statute does require a hearing. Hearings have essential components that are provided by attorneys on behalf of their respective parties. Here, even the trial court recognized the Commonwealth had a continuing interest in Goff's probation as evidenced when it called the case on the docket—"*Commonwealth v. Goff*"—and again when it copied the Commonwealth—after the fact—on the orders it entered. Likewise, the probation officer recognized the Commonwealth's continuing interest in Goff by copying it with the March 2013 supervision reports, even though it inexplicably did not copy the Commonwealth with the report dated January 15, 2013, which launched this odyssey.

While a probation hearing is "not part of the original criminal prosecution," and is less formal than a trial, *Hunt,* 326 S.W.3d at 439, multiple actors are required—just as we would not expect a probationer to prove his own violation, we would not expect a judge to represent a probationer, and we should not expect the Commonwealth's Attorney to sit in the courtroom and say nothing. All parties to litigation, including the Commonwealth, are entitled to their day in court. *United States v. Nixon,* 418 U.S. 683, 709, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974) ("We have elected to employ an adversary system of criminal justice in which the parties contest all issues before a court of law."). Thus, we now hold a Commonwealth's Attorney is entitled to receive proper notice of every court-initiated probation hearing, to attend all such hearings, and to participate therein.

WHEREFORE, the trial court's position that the Commonwealth's Attorney may not participate in a probation modification or revocation hearing initiated by the trial court—absent an invitation from the trial court—is erroneous. Therefore, the order entered January 18, 2013, modifying Goff's probation, must be vacated and remanded for further proceedings consistent with this Opinion. Furthermore, this clarification of the law shall have no retroactive effect on any other similarly situated probationer.

---

**15.** 2011 HB 463 placed probation under the term "community supervision" as defined in KRS 439.250(6).

## ORDER

WHEREFORE, Goff having moved to dismiss the Commonwealth's appeal on grounds of mootness, and the Court having determined the limited issue of whether probation may be modified *ex parte* by a trial court without an opportunity for the Commonwealth to give input and participate in a hearing on the matter is one that is both capable of repetition and in need of resolution under *Morgan*, 441 S.W.3d at 102, we hereby DENY the motion to dismiss the appeal based on Goff's suggestion of mootness.

ALL CONCUR.