RENDERED: MARCH 17, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1519-MR

KIRBY GRIMES                                                       APPELLANT

APPEAL FROM GARRARD CIRCUIT COURT
v.          HONORABLE C. HUNTER DAUGHERTY, JUDGE
ACTION NO. 17-CR-00055

COMMONWEALTH OF KENTUCKY                                APPELLEE

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: CETRULO, DIXON, AND EASTON, JUDGES.

CETRULO, JUDGE: Appellant Kirby Grimes ("Grimes") appeals the Garrard

Circuit Court Order revoking his probation.

## I.    FACTS

In October 2018, Grimes pled guilty to second-degree robbery and

tampering with physical evidence. The circuit court sentenced Grimes to 15 years

of incarceration, probated for five years. In June 2019, Officer Gregory Stiles ("PO Stiles") with the Division of Probation and Parole ("Probation and Parole") filed an affidavit stating Grimes absconded earlier that month. The circuit court issued a warrant for his arrest, and in November 2020 Grimes was arrested.

The circuit court held a probation revocation hearing that month. At the hearing, Grimes's probation officer, Trisha Douglas ("PO Douglas"), stated that despite absconding, Grimes had not picked up any new offenses and had been addressing his mental health concerns on his own. Therefore, the circuit court allowed Grimes to remain on probation but ordered him to reside at The Hope Center[1] until Probation and Parole approved another placement. Grimes was released from custody on November 25, 2020.

Early the next month, PO Douglas submitted an affidavit updating the circuit court on Grimes's situation since his release. She explained that immediately upon his release from the detention center in November 2020, Grimes was admitted to Eastern State Hospital. The following week, when the hospital released Grimes, he called PO Douglas and left a message explaining that he was leaving Eastern State Hospital and returning to The Hope Center. When PO Douglas attempted to call him back, he failed to answer or return her subsequent calls. PO Douglas later called The Hope Center to verify whether Grimes was

---

[1] An emergency shelter in Kentucky that provides recovery programs.

there, but she was not able to confirm his presence. PO Douglas requested an absconding warrant for Grimes, which the circuit court issued.

At a December 2020 hearing on those issues, PO Douglas explained that the day the warrant was issued, Grimes's sister contacted her and informed her that Grimes had been admitted to Good Samaritan. Grimes then contacted PO Douglas and informed her that he was trying to get into a mental health unit there. PO Douglas instructed Grimes that calling once to explain his whereabouts was not enough to constitute "staying in contact" with Probation and Parole.

PO Douglas noted that if Grimes was able to get into a stable mental health facility, she was willing to work with him and would not recommend revoking his probation at that time. Following PO Douglas's update, the circuit court continued the hearing until PO Douglas and Grimes's public defender could find Grimes an appropriate mental health unit. In late-January 2021, the parties found an appropriate treatment program, the SHARE Program,[2] and the circuit court released Grimes to that program.

The next month, another Probation and Parole officer ("Officer Warren") submitted an affidavit to the circuit court, stating Grimes left the SHARE Program without permission. Following his discharge, Grimes made no attempt to

---

[2] SHARE is a facility in Kentucky that provides support for men with substance abuse issues and/or serious mental illness. The record indicated Grimes was admitted for the serious mental illness services only.

contact Probation and Parole. Officer Warren requested that the circuit court revoke Grimes's probation and issue a warrant for his arrest. The circuit court issued the warrant and Grimes was arrested in March 2021. Grimes was on the court's docket early the next month.

At the Zoom hearing in April 2021, the circuit court asked PO Douglas to "tell us what is going on with [Grimes]." The circuit court did not swear PO Douglas in before she began recounting the events. PO Douglas explained that this was another absconding charge and failure to complete treatment. She noted that Grimes had left the SHARE Program, AWOL,[3] and had not contacted Probation and Parole. Following PO Douglas's statements, the circuit court informed Grimes that he had the right to speak with his attorney before addressing the court, which Grimes opted to do. Grimes was present via Zoom from the Fayette County Detention Center. He presumably communicated privately with the public defender while the circuit court moved on with the remainder of the docket.

A few minutes later, Grimes and the public defender came back on the Zoom video call and the circuit court asked the public defender "to catch us up." The public defender explained that he had some factual and legal arguments. He told the circuit court that Grimes had left the SHARE Program because two

---

[3] Absent without leave.

-4-

patients had overdosed while he was there, and the staff had not managed them well. Those experiences affected Grimes's mental health. Grimes then left the SHARE Program but immediately entered a 30-day program at the University of Kentucky ("UK"), which he completed. The public defender acknowledged that Grimes should have called Probation and Parole during that transition; however, Grimes explained that he was not able to make phone calls while in the UK program. He was released from the UK program shortly before his latest arrest.

As to his legal argument, the public defender noted that to revoke probation, the circuit court must find both that Grimes could not be managed and that his failure to comply constituted a significant risk to prior victims or the community. The public defender conceded that Grimes had "not been doing great with being managed"; however, he emphasized that Grimes's history did not indicate that he posed a significant risk to himself, prior victims, or the community at large.

PO Douglas stressed that she had spoken with Grimes numerous times about the importance of staying in contact with Probation and Parole, noting that they could not supervise him if they could not find him. She explained that despite the continual insistence that Grimes stay in touch with Probation and Parole, he failed to contact them and received another absconding charge. PO Douglas

further noted that a failure to stay in touch meant that she could not determine whether Grimes was staying on his medication.

The circuit court agreed with PO Douglas, stating that they "have done everything they can do." The circuit court found that Grimes had committed the initial offense, in 2018, in part because he was not taking his medication. Therefore, it concluded, that Grimes's failure to stay in contact with Probation and Parole, which monitored whether Grimes was taking his medication, created an increased risk to himself and others that he would reoffend. The circuit court further noted that the initial offense had been serious, so the potential to commit a similar offense was serious.

After that discussion, the circuit court signed a form probation revocation order ("Revocation Order"). The Revocation Order stated that the "matter was before the Court for [Grimes] to show cause why probation should not be revoked." It further stated that "evidence was presented to the alleged violation" and "[b]ased on the evidence and the criteria set forth in Kentucky Revised Statute ("KRS") 439.3106, the [circuit court] finds that [Grimes] failed to comply with conditions of supervision" regarding failure to complete counseling and failure to report as directed.

Further, the circuit court order indicated that such failures constituted a significant risk to the community at large because "Defendant's failure to

-6-

complete counseling is an indication of a return to drug/alcohol use[4] and a likelihood that new crimes will be committed; Defendant's failure to report makes it impossible to address the issues in Defendant's life that led to the offense(s) in this case, and that failure to address those issues makes it likely that Defendant will reoffend." Additionally, the form stated "[t]he Court further finds that Defendant's violation(s) indicate that (s)he cannot be appropriately managed in the community. . . . [and] finding sufficient grounds to revoke the Defendant's probation . . . hereby REVOKES the Defendant's probation and re-imposes the sentence of fifteen years . . . ."

Grimes appealed, arguing (1) the April 2021 revocation hearing violated his procedural due process rights, and (2) the circuit court abused its discretion when it found he was a danger to the community.

## II.   STANDARD OF REVIEW

Grimes did not properly preserve the procedural due process issues and requests palpable error review under Kentucky Rule of Criminal Procedure ("RCr") 10.26. This Court reviews such issues for "manifest injustice" for which "the required showing is probability of a different result or error so fundamental as

---

[4] The record did not indicate that Grimes had substance abuse issues. It appears this was included simply because it was a form order.

to threaten a defendant's entitlement to due process of law." *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky. 2006).

## III.    ANALYSIS

Grimes argues, in pertinent part, that the revocation hearing violated his due process rights because the trial court (1) permitted unsworn testimony; and (2) impermissibly shifted the burden of proof to Grimes.[5]

### 1.    Unsworn Testimony

For probation revocation hearings, the minimum procedural due process requirements include

> (a) written notice of the claimed violations of (probation or) parole; (b) disclosure to the (probationer or) parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body . . . and (f) a written statement by the factfinder[ ] as to the evidence relied on and reasons for revoking (probation or) parole.

---

[5] Additionally, Grimes argues the circuit court violated his rights because the Commonwealth, although allegedly present, did not participate in the revocation hearing.  In support, Grimes notes that the Commonwealth is entitled to participate in such proceedings. *Commonwealth v. Goff*, 472 S.W.3d 181, 192 (Ky. App. 2015) (citation omitted).  Importantly, however, a right to participate in the hearing is not a mandate for the Commonwealth to participate in a way the defendant finds appropriate.  Further, such failure to *allow* the Commonwealth to be present at the hearing – which did not occur here – could violate the *Commonwealth's* right to participate, not a right of the defendant.  Therefore, the defendant would not be the appropriate party to raise such issue, if it existed.

*Hunt v. Commonwealth*, 326 S.W.3d 437, 439 (Ky. 2010) (quoting *Gagnon v. Scarpelli*, 411 U.S. 778, 786, 93 S. Ct. 1756, 1761-62, 36 L. Ed. 2d 656 (1973)).

Grimes explains that according to *Hunt*, "[i]mplicit in the right to confront and cross-examine [under requirement (d), above] is an assumption that adverse witnesses will be under oath, and subject to formal cross-examination." *Id.* at 439. Therefore, Grimes argues that the hearing violated his due process rights because he was denied the right to confront and cross-examine adverse witnesses who were under oath. In *Hunt*, "[t]he judge simply asked a probation officer what [the probationer] had done to violate the terms of his probation" and "[t]he probation officer, who was not under oath, proceeded to list [the probationer's] violations." *Id.* at 438-39. The probationer "was then asked to respond to [those] allegations." *Id.* at 439.

The Kentucky Supreme Court found that such proceeding resulted in no testimony being taken, which had "denied the [probationer's] right to confront and cross-examine adverse witnesses." *Id.* As a result, it concluded the hearing "clearly violated [the probationer's] due process rights." *Id.* The Kentucky Supreme Court emphasized that "[d]ue process requires that alleged violations be established through sworn testimony, with the opportunity for cross-examination by the probationer." *Id.* at 439-40.

The similarities here are clear. During the revocation hearing, the circuit court simply asked PO Douglas what was going on with Grimes, and PO Douglas, who was not under oath, proceeded to list Grimes's probation violations. The circuit court then asked Grimes to respond to the allegations through his attorney. As in *Hunt*, here, the circuit court's failure to properly take testimony violated Grimes's due process right to confront and cross-examine adverse witnesses.

While the Commonwealth acknowledges Grimes's similarities to *Hunt*, it argues that *Hunt* is not applicable here because (a) Grimes stipulated to the allegations, negating his right to confront witnesses; and (b) he "invited the error." We disagree.

The Commonwealth argues that Grimes stipulated to PO Douglas's allegations; therefore, "there was no need for testimony[.]" *See Goldsmith v. Commonwealth*, 363 S.W.3d 330, 332 (Ky. 2012). *Goldsmith*, however, is not particularly insightful as to what constitutes a stipulation. There, the Kentucky Supreme Court simply stated that the appellant's "counsel stipulated to the violation" at the beginning of the revocation hearing. *Id.* at 331-32. As the record here does not clearly indicate that Grimes stipulated to the allegations, we turn to *Potter v. Reese*, 39 S.W.2d 967, 968-69 (Ky. 1931), another case upon which the Commonwealth relies.

-10-

In *Potter*, the parties had entered an agreement stating that they stipulated there was a single issue on which the circuit court needed to take evidence in a second trial. *Id.* at 967. At the second trial, the parties "directed and confined the evidence and the instruction to the jury to the single issue which the stipulation embraced." *Id.* at 968. On appeal, the appellant argued witnesses should have testified to a second issue; however, the Kentucky Supreme Court held that the appellant had agreed to take evidence on only one issue, so "the appellant cannot now complain against the action of the court in confining the evidence[.]" *Id.* at 969.

Here, the parties entered no such agreement. The Commonwealth argues that Grimes "stipulated to the allegation" when the public defender acknowledged that Grimes failed to call PO Douglas, and later when the public defender admitted that Grimes was "not doing great being managed at the moment[.]" However, Grimes emphasizes, and the record indicated, that he did not stipulate to the allegations as recited – unsworn – by PO Douglas. Instead, the public defender explicitly stated that he had factual arguments regarding PO Douglas's statement and presented his own statement of facts. The circuit court never asked Grimes if he stipulated to any of the allegations. And Grimes never expressed that he stipulated to the allegations, nor did he enter an agreement in

-11-

which he agreed to certain facts, like in *Potter*. We, therefore, are not persuaded by the Commonwealth's argument.[6]

Next, the Commonwealth claims that Grimes invited the errors he now appeals and therefore is estopped from raising the issues. In support, the Commonwealth supplies cases in which defendants had, by their own actions, waived a right then attempted to raise the waived issues on appeal. *See Gray v. Commonwealth*, 203 S.W.3d 679, 686 (Ky. 2006); *see also Quisenberry v. Commonwealth*, 336 S.W.3d 19, 37-38 (Ky. 2011). Again, we find no parallel here.

In *Gray*, the Kentucky Supreme Court explained the typical scenario in which "invited errors" occur: "We have often held that a party is estopped to take advantage of an error produced by his own act." *Gray*, 203 S.W.3d at 686 (citing *Wright v. Jackson*, 329 S.W.2d 560 (Ky. 1959)). It further explained that "[a]lthough most criminal cases addressing the issue of invited error do so in the context of a criminal defendant's waiver of his right to a jury trial[,]" the rationale for "invited errors" is that a defendant cannot agree to an act – *e.g.*, waive a jury

---

[6] Likewise, we are not persuaded by the Commonwealth's similar argument under *Louisville & N.R. Co. v. Sewell*, 134 S.W. 162 (Ky. 1911). There, the Kentucky Supreme Court held that where the parties had agreed that a verdict amount was not excessive, one party could not later move for a new trial based on its argument that the verdict amount was excessive. *Id.* at 165. It concluded "[t]he stipulation [was] a waiver of the error[.]" *Id.* Again, we find no such agreement here.

-12-

trial or forgo the opportunity to question a witness[7] – and later complain on appeal that the circuit court erred to the defendant's detriment. *Id.*

There, the defendant appealed, alleging the circuit court erred when it failed to admit audiotaped statements. *Id.* However, the Kentucky Supreme Court found the defendant had waived any error in excluding those statements because the defendant had the opportunity to question that witness about the audiotaped statements. *Id.* His failure to do so was an "invited error" – *i.e.*, the result of his own inaction – therefore, he could not later appeal that issue. *Id.*[8]

Here, the circuit court simply asked PO Douglas what was going on with Grimes without swearing her in, then asked the public defender for a response. PO Douglas made a few more statements, then the circuit court responded with its determination. Grimes's actions (or inaction) did not produce the error alleged – a violation of the right to confront and cross-examine sworn witnesses. Therefore, we do not agree that this was an invited error. As such, Grimes is not estopped from raising such violations on appeal and we find *Hunt* applicable.

---

[7] *See Quisenberry*, 336 S.W.3d at 38.

[8] Likewise, *Quisenberry* involved a jury trial in which a defendant who "express[ly] represent[ed] to the trial court that the evidence . . . was sufficient, waived his right to claim on appeal that it was not." *Quisenberry*, 336 S.W.3d at 38. There, the Kentucky Supreme Court agreed with a Maryland Court, which had found a defendant's specific request for a jury instruction "constituted an intentional waiver of the right to argue on appeal that the evidence was insufficient to support the . . . conviction." *Id.* (citation omitted).

### 2.    Impermissible Burden-Shifting

Next, Grimes notes that the circuit court's Revocation Order stated that the "matter was before the Court for [Grimes] to show cause why probation should not be revoked."  Grimes argues that such statement showed that the circuit court had impermissibly shifted the burden to him to prove that revocation should not occur.  Grimes explains that the appropriate burden of proof is on the *Commonwealth* to prove a violation by a preponderance of the evidence.  *Hunt*, 326 S.W.3d at 440 (citing *Rasdon v. Commonwealth*, 701 S.W.2d 716, 719 (Ky. App. 1986)).

Again, Grimes relies on *Hunt*.  There, following the unsworn testimony and the probationer's response to the allegations, "the circuit court concluded, 'the defendant having appeared in open court with his attorney . . . *to show cause why he shouldn't be revoked*, the court having heard evidence finds the defendant violated the terms and conditions of probation.'"  *Id.* at 439 (emphasis added).  The Kentucky Supreme Court explained that probation revocations require "proof by a preponderance of the evidence that a violation has occurred."  *Id.* at 440 (citation omitted).  Yet, the circuit court's statement that the probationer was "to show cause why he shouldn't be revoked[,]" enlisted a "'show cause' standard of proof."  *Id.*  Using such standard turned the "probation revocation hearing into an inquisition, where the probationer [was] asked to refute the allegations[.]"  *Id.*

As such, the Kentucky Supreme Court concluded the circuit court had "improperly shifted the burden of proof." *Id.*

Here, the Revocation Order contained a nearly identical statement: "This matter was before the Court for [Grimes] *to show cause why probation should not be revoked*." The Commonwealth, however, urges this Court again to find *Hunt* inapplicable and instead consider a different, unpublished case, *Tesch v. Commonwealth*, No. 2017-CA-000357-MR, 2018 WL 5778801, *3 (Ky. App. Nov. 2, 2018). Again, we disagree.

In *Tesch*, a panel of this Court found that the use of "show cause" in a couple of orders in the record did not necessarily mean the circuit court had shifted the burden. *Id.* Instead, this Court looked to the structure of the proceeding to determine whether the burden had actually shifted:

> Commonwealth put on the sworn testimony of a probation supervisor, his supervising officer's report detailing the events, and an affidavit providing that [the probationer] had not made a single [ordered payment]. [The probationer's] counsel cross-examined the probation supervisor. The court also provided [the probationer] the opportunity to testify on his own behalf to provide explanation for his absence and failure to make payment. The use of the term "show cause" did not have the effect of shifting the burden of proof from the Commonwealth to [the probationer] to prove that he did not violate the conditions of his probation.

*Id.*

There, a panel of this Court explained that to determine whether the burden had shifted, we look to the hearing. *See id.* It noted that even when a statement suggests the circuit court is shifting the burden, the burden did not actually shift *if* the record showed that the circuit court had not required the probationer to refute the violation allegations, as detailed by the Commonwealth's introduction of evidence and opportunities to hear testimony. *Id.* We find no such situation here.

Here, the circuit court asked Grimes to respond to the unsworn allegations and immediately made its determination following the public defender's response – without cross-examination of PO Douglas or Grimes's testimony. Further, the Commonwealth did not put on a report detailing the events (or participate in the hearing at all, for that matter). As such, the circuit court impermissibly shifted the burden to Grimes to refute the allegations made against him, thereby violating his due process rights.

Ultimately, in *Hunt*, the Kentucky Supreme Court stated that although a record may not appear to suggest a viable defense to the allegations, that could have been the result of the proceeding's due process errors. *Hunt*, 326 S.W.3d at 440. As such, the Kentucky Supreme Court found that a circuit court's "failure to comply with the minimum requirements of due process [*e.g.*, permitting unsworn testimony and shifting the burden to the defendant] is exactly the type of error to

-16-

which the 'manifest injustice' standard of RCr 10.26 was meant to apply." *Id.* Therefore, here, the hearing violated Grimes's due process rights because Grimes was not given the opportunity to confront and cross-examine adverse witnesses and the burden of proof shifted to Grimes. Those violations resulted in manifest injustice.

As the revocation hearing violated Grimes's due process rights, we must remand on those issues; therefore, we need not address Grimes's argument that the findings of that hearing were unreasonable.

## CONCLUSION

The circuit court violated Grimes's due process rights during the probation revocation hearing. As such, we REVERSE the Revocation Order based on that hearing and REMAND for proceedings consistent with this Opinion.

ALL CONCUR.

| BRIEFS FOR APPELLANT: | BRIEF FOR APPELLEE: |
|---|---|
| Sarah D. Dailey<br>Frankfort, Kentucky | Daniel Cameron<br>Attorney General of Kentucky |
| | Jenny L. Sanders<br>Assistant Attorney General<br>Frankfort, Kentucky |